at all. Arguments not to exceed 15 minutes per side. Mr. Schabelsky for appellant. May it please the Court, my name is Mike Schabelsky along with Nelson Genshaft. We represent the District Court committed two errors in dismissing the complaint here. First, it read the so-called 140% rule of HUD too narrowly. And second, it read the breach allegations in the complaint too narrowly. Each of those is an adequate and independent basis for reversal. With respect to the first grounds, your honors, the District Court mistakenly believed that the 140% rule merely required the commissioning of a second rent comparability study. And that the rule did not displace the authority of the contract administrator to make a determination in his reasonable judgment of what were comparable market rents. That reading of the rule is incorrect. It is too narrow. Even I believe the appellees agree with that. The 140% rule goes on not merely to require the commissioning of a second study, but to require the administrator to peg the rents to whatever the results of the HUD commission study are. No matter how bad those results are, no matter how wrong they are, or as alleged here, even if they were the result of a collusive fraudulent process in which HUD put his thumbs on the challenge or appeal that erroneous determination of the HUD commission study. So instead of merely providing a second opinion to guide the administrator's decision, it strips the authority of decision. It dictates what the contracts will be and prohibits the administrator from exercising its reasonable judgment. So this one sounds to me like a problem you have with the HUD regulation with the 140% rule. So why didn't you sue HUD? Well, Your Honor, there's two things. First, it is not a regulation, and so therefore it didn't go through any APA comment in rulemaking. There was no ability to challenge this guidance that HUD has come up with. But more importantly, Your Honor, New Lansing has a contract with the authority and the contract administrator. And that contract, although part of the Section 8 program, creates a binding obligation and entitlements, entitles New Lansing to contract rents that are comparable to market rents in its market area. And it puts a duty on the administrator to make that reasonable determination. So our contract wanted to promulgate regulations. Maybe they could have done that. I don't know, but they didn't. And so HUD is not the proper party here, and that's why we're suing. But of course, HUD has and the authority would have a way to have resolved this. They could have obviously redrafted the contracts, done new things. They didn't. The second error that the district court did was reading the allegations of the complaint too narrowly. The district court believed that New Lansing complained that a breach occurred merely because a second study was commissioned. That's not all that New Lansing complained. New Lansing complained not only about the process, but about the substance, the decision that was made. And if you look at the allegations in the First Amendment complaint, particularly paragraphs 21 through 28, it's laid out there that the HUD commission study was fraudulent, it understated true comparable market rents, and that the authority ceded, the administrator ceded its discretion and relied on whatever the HUD study said to lower our rents below market rents. So the allegations of the breach consisted not merely of the commissioning of a second study, but what was done with that study. And that is really the heart of the breach. I'm struggling with the distinction between some of the arguments you're making before this court and your complaint itself. It seems to me that the argument before us is that none of the guidebooks apply to the renewal contract, and yet your complaint is replete with references to the guidebooks. And tell me what your argument is. Yes, ma'am. Is that argument that the guidebooks, none of them apply, or is it comparable with your complaint that references the validity and your expectations relative to the guidebooks? Right. Let me explain. I'll address both. First, what is our view of the status of the guidebook, and then I'll address the allegations in the complaint. And what did you believe? Yes. So our view is that the Section 8 renewal policy guidebook doesn't apply to the rent adjustments under Section 5 of the contract. None of them. None of the guidebooks. None of them. If you look at the guidebook, it's called the renewal guidebook. It pertains and applies to the creation, the renewal of a new contract. When this contract was formed, as is alleged, the contract, the renewal guidebook, had nothing to do with the rent adjustments that arise five years after the contract is entered into. And so really, none of the guidebook should have any bearing on the rent adjustment process at Section 5, because one deals with the initiation of the contract when you're renewing an expiring contract. It has nothing to do with the rent adjustments that occur five years later. But you don't necessarily have to go that broadly here, Your Honor, because 140 percent rule, which is in Chapter 9 of the current guidebook, was not anything that existed when this contract was entered into. It was adopted subsequently. Any HUD requirements? Well, and that, and therein lies, Your Honor, one of the issues there. The contract says it will be administered in accordance with HUD regulations and requirements. What does that mean? The contract doesn't make any mention to the guidebook, the renewal guidebook. And under Ohio... Isn't the guidebook a regulation? No, ma'am. It is not a regulation. It was not adopted pursuant to APA notice and common rulemaking. And if, in fact, you look in the introduction of the guidebook itself, it delineates the regulations that HUD has promulgated that are part of 24 CFR. This guidebook is not part of this. This guidebook does not have the force of law. It is not a duly promulgated regulation. Was it promulgated pursuant to regulations that allow it to be promulgated? I have to think about that one for a minute, Your Honor. Because if it were, hypothetically, then you could say that the general language in the contract referring to regulations of HUD would include guidebooks that were promulgated pursuant to regulations of HUD. I do know that the HUD regulations, and we pointed that out in our reply brief, have a provision that says subsequent adopted even regulations won't be applied retroactively to existing contracts if they're inconsistent with those existing contracts. So whether or not a guidebook could be promulgated, and I'm not questioning that they could create a guidebook. The question is what's the effect of it? What's the legal significance of it? Here it is not a regulation, and the HUD regulations themselves say even if it were a regulation, it cannot be applied retroactively to existing contracts if it's inconsistent with those existing contracts. But why does it need to be a regulation? The contract says regulations or requirements. Yes, ma'am. How can it not? I mean, I understand your argument a regulation is something that has the force of law. To my knowledge, that includes statutes and regulations and I suppose common law rules, but we're not dealing with common law rules here. So requirement must mean something different than statute or regulation. So your whole point is the guidebook is not a statute or a regulation. Why isn't it a requirement? Because the word requirement in this context is hopelessly ambiguous. It's not a legal term of art. Under Ohio contract law that applies to this contract, for a document, for something to be incorporated into a contract, the contract has to make a clear, express, unambiguous reference to the document or the body of documents to be incorporated here. And so when the contract says HUD requirements, what does that mean? Why doesn't it mean things that HUD purports to require? HUD purports to require the guidebook. Then, well, two points, Your Honor. First, why that shouldn't be the case? Because then what you're positing is HUD can just unilaterally decree without going through any APA rulemaking, this is our new requirement, and retroactively impose that into a contract and reduce our contract rights. That shouldn't be what the law is. But here's the second reason, Your Honor, is that for incorporation to occur, the reference has to be clear and ambiguous. And so if where you're coming, if where you land is saying, well, regulation, the term requirement is ambiguous, maybe it does refer to our guidelines, maybe it doesn't, we still win. Because unless the... I don't think it's ambiguous. What if I think that the HUD guidebook says it's a requirement, it says it applies to amend rent packages. And that term is not defined. That term is not, amend rent packages is not used in the contract. It's not defined in the guidebook. It's clear from context, though, right? We can use all our tools of statutory or contract interpretation to figure out what the terms mean. But under Ohio law incorporation, this is not interpreting a statute? Right. Is there a clear reference in the contract to what the parties meant and is it ambiguity? It's not to be incorporated. It can't be that under Ohio law every single term in a contract must be defined or else by definition, defined in the contract or else by definition it's ambiguous. For, Ohio law is clear, Your Honor, for incorporating an extraneous document into a contract. Isn't that your problem? Is that you're looking to the incorporation of extraneous documents into a contract, whereas what you have here is not an extraneous document. It's the document that's referred to by the contract itself when it speaks to regulations and other requirements. Well, but no, Your Honor, that is the incorporation clause. And so the governing applicable standard is, is that reference to requirements? I'm struggling with that because I do understand your argument under Ohio law about incorporating documents. But here what you're talking about to me seems to be something that is already in the linguistic portion of this contract because it references both regulations and other requirements. And as Judge Moore asked, this, the guidebooks are in fact created as part of the regulatory authority granted. I mean, isn't that correct? HUD has the regulatory authority that is granted to it through its statutory provisions. And that includes the right to make these rules that are not themselves necessarily regulations, but a part of the regulatory structure. All right. I know my time is up. You may answer that question, and it's two parts. The first point, Your Honor, is even if you accept all of that premise that you outlined there, if the new guidebook is inconsistent with the contract, it doesn't apply. And so the contract. That's a different argument. I understand that. Okay, very good. I just wanted to clear that. But addressing the first point, Your Honor, is that Section 8's reference to administration in accordance with regulations and requirements is an incorporation. It is saying in applying this contract, Administrator, you need to look to this external body of documents, whatever rules and regulations means, and they are to be incorporated and you are to follow them. So I do believe, Your Honor, that it is an incorporation question, and therefore the question of higher law is does the term requirement so clearly and unambiguously refer to a guidebook that is not a regulation, has never been subject to APA challenge, and can't be challenged, and on its face says it applies to renewals, the terms and conditions and how you go about renewing a contract and not dealing with rent adjustments under the five-year term. Thank you. Thank you, Your Honor. May it please the Court, my name is Lori Feuer with Kegel, Brown, Hill & Ritter, representing the defendants, Columbus Metropolitan Housing Authority, and Assisted Housing Services Corporation, which I'll refer to as CMHA. I can tell Your Honors have read the complaint. This case was a lot simpler in the trial court than it is here, with a lot of new issues that we didn't have before the court or the parties in the trial court. The motion to dismiss tests the sufficiency of the complaint, and when you look at the allegations of the complaint in this case, as it pertains to whether CMHA breached a contract, the allegations are repeatedly that CMHA breached the contract by submitting the matter to HUD under the 140% rule. In 1997, Congress placed on HUD the right and the responsibility to prescribe the methods by which comparable market rents are to be determined in the project-based Section 8 program. And so when we talk about whether HUD had the authority to create rules about how comparable market rents are determined, HUD had the responsibility, a statutory responsibility, created in MARA. And so beginning in 2015, the 140% rule, which appears in the guidebooks, is included among those methods. And as a contract administrator at HUD, CMHA is obligated to administer contracts in accordance not only with statutes and regulations, and I would say here it has to administer the contracts in accordance with the statute that gives HUD authority for prescribing the methods, and also it has to comply with those prescribed methods. The allegations of the complaint really focused in on whether, not on whether the 140% rule was a requirement. That really wasn't an issue of dispute in the trial court. The question was whether that requirement is inconsistent with the renewal contract such that it could not be applied here. And, in fact, in opposing CMHA's motion to dismiss in the trial court, New Lansing stated that the crux of its claim is that CMHA breached the exclusion when it applied the 140% rule. The problem for New Lansing was that it was not able to identify any language in the contract that is actually inconsistent with the 140% rule. Does the contract provide how the rents are to be established at this five-year point? What the contract says on that is that the contract administrator is to compare the comparable market rents. Let me back up. As distinguished from the four years before the fifth year, in those four years there were automatic rent adjustments, increases. In the fifth year, the contract administrator is to compare the comparable market rent to the existing contract rents, and then to make any adjustments that are necessary to bring the rents to the comparable market rents. And that's in the contract? That is in the contract. The methods for determining comparable market rents are not spelled out in the contract. And if they had been spelled out in the contract in some way that was inconsistent with the 140% rule, then I think New Lansing might have a claim here. But the contract does not specify any particular method. But it does specify that the housing authority, as the contract administrator, needs to follow HUD's guidance on that. And HUD's directions and requirements on that are contained in the guidebook. It does also authorize your client to may require the owner to submit to the contract administrator a rent comparability study. It does. And so is that the question, as you understand it, that the argument is that you're limited to asking New Lansing for a comparability study, but you cannot make one on your own under the 140% rule? Is that your understanding of the argument? My understanding of the argument is, in the trial court argued there, was, and as reflected in the complaint, is that CMHA could not, quote, unquote, abdicate its authority to HUD by, upon identifying that this is an instance in which the owner is seeking a rent increase that exceeds 140% of the median rents. following HUD's process to send the matter to HUD for further review and determination. I think the argument has been, at least, and more in this court, the argument has been that the renewal contract gives places on CMHA, as contract administrator, the obligation to determine comparable market rents. The reality is that, by statute, comparable market rents are to be determined by the process HUD prescribes. And HUD can keep that process for itself. It can describe a process that places that process on the contract administrators, and in some instances it does. But in the case of a rent increase request that requests high rents, HUD's prescribed process is that CMHA, as contract administrator, upon identifying that, sends the request and the owner's RCS to HUD. And the process that HUD's prescribed is that HUD then will get its own RCS. And to be clear, the RCS that HUD gets under its process is also by a certified appraiser, who certifies his work in the appraisal document. He's governed by USPAP, professional standards governing appraisers. What you have, I think the argument is it was not reasonable to select the study performed by HUD, or to use it in determining what appropriate rents would be. But, in fact, there were two studies before you. Is that correct, or is that incorrect? There are two opinions in this case. Yes, there are two opinions of the comparable market rents. There is the opinion prepared by the appraiser that New Lansing hired, and there's the opinion prepared by the appraiser that HUD hired. And those two opinions disagree. And I would say... And did you get to choose which one to follow, or were you required by the HUD regulations to follow the HUD one? The process, as set out in the guidebook, is a formulaic process. The process compares the two opinions. And if they are within a certain distance of each other, the owner's opinion will prevail. But if they are not, then the opinion of HUD's appraiser is 105% of the HUD's appraiser's opinions of the comparable market rents, is what becomes the comparable market rents as determined through HUD's process. Then you follow the HUD number 105% of... The housing authority here followed that number. It compared that number to the existing contract rents to produce the go-forward rents. So what is the argument that your opponents seem to be making that this is not a renewal, but this is rather the fifth year of an existing contract? This is the fifth year of an existing contract. It's a renewal contract, but this is the fifth year. And so the question you're referring to is the question of whether the guidebook facially applies to a request to amend rents in the fifth year, because the guidebook has some language that says it applies to renewal processes. And this wasn't a renewal process. We don't say it was. But what we put forward in the trial court is that the guidebook facially does apply. The guidebook says it applies to renewal packages, and it says that it applies to amend rent packages, and that this isn't an amend rent package. It's an effort to amend the rents. So are rents amended every year? There is a process for it. They may or may not actually be amended every year, but there is a process that takes place every year, yes. And it may produce amendments or it may not. So in this particular case, and we're just dealing with a motion to dismiss, right, so that we just look at the complaint, do we know whether the rents were amended in years two, three, and four, and what process was used? We do know that there were, and this would be supported by the complaint, we do know that there were increases in at least some of those first four years, because the rents that were produced as a result of this fifth-year process, those rents were less than the then-existing rents, but they were more than the rents at the outset in 2014 that New Lansing had agreed to when it entered into the renewal contract. So from that we know that there were some adjustments upward in some of the earlier years. Regarding, and I know we argue this in our briefs and you have it, but these arguments about whether the guidebook facially applies and about whether the guidebook needs to be incorporated, those are new issues here on appeal. We certainly asserted at the trial court the opposite of what's being argued here by New Lansing, that the guidebook does facially apply, and there was no dispute about that. Is there a dispute about that in the written language of the complaint? No, the complaint acknowledges that these were requirements and that CMHA was acting at HUD's direction when it applied the 140% rule. So my view is everybody agreed in the trial court that what CMHA was doing here was following HUD's direction. There's really no allegation that CMHA wasn't doing exactly what it was supposed to do according to HUD's requirements. Do you think that sort of concession in the, I mean if you want to call it a concession in the complaint, is that a fact question, whether the guidebook is a requirement, or is that sort of a litigating strategy, more of a concession than a fact issue? I'm just wondering, is the guidebook a requirement? Is that a question of law for the court or a question of fact that maybe they admitted in their complaint? How do we think about that? Well, I think that the, I guess one answer to that is the guidebook was before the court in the district court. The guidebook language is what it is. But I don't think the only, and so I think that could be determined as a matter of law. But what else we have here is, which is clearly alleged in the complaint, is that HUD followed this process. HUD was on board that this was the process. So... Well, HUD doesn't challenge the process because HUD is quite happy with the process, right? The process ends up with a much lower rent than New Lansing requested. HUD, yes, Your Honor, HUD created the process. And my only point was that on the question of, if there's a question of whether HUD intended for this to be a requirement, I think the complaint can only be read that it asserts that this was a requirement of HUD and that CMHA in invoking the 140 percent rule was acting at HUD's behest. And in accordance with their relationship with HUD. Yes. This kind of, this idea of what is a reasonable choice is dependent, as I understand it, in the complaint on, as being objected to now, that the HUD requirement is a problem, but in fact the structure of the relationship, as evidenced in the complaint, is that your client is obligated to use the requirements and regulations imposed by HUD. It is, not only by the contract that my client has with HUD, but also as reflected in the renewal contract. Okay, that's just good. Sorry. Go ahead. Your opponent has been saying in this courtroom that it's a fraudulent study. Was that an allegation in the complaint? I don't believe so. No. Any further questions? No. Thank you. Thank you. Your Honors, I would like to make three points in rebuttal. The first concerns the allegations in the complaint. I want to be clear about this. The complaint certainly says that HUD viewed the 140% rule as a requirement and wanted and directed the authority to follow it, and that the authority perceived it to be a requirement that it was required to follow. But the amended complaint also makes clear that that is not an applicable requirement that does not apply to this contract. It is, amongst other things, inconsistent with the provisions of Section 5 of the contract. And, therefore, even if the What about all of your allegations in the complaint that threw out reference that in a complaint about HUD, that HUD has no authority under the renewal contract or the guidebook. Every time you reference the particulars of the renewal contract, you also reference the particulars of the guidebook, implicitly saying that the guidebook is what we are referring to in this case, what HUD is referring to, and what your opposing counsel is representing her client is referring to. Well, let me see if I can clarify that for your Honor. The complaint is reciting as a matter of historical record what the authority did, that the authority, as a matter of fact, thought the 140% rule was a HUD requirement, thought it had to follow the rule, the guidebook, and did follow the guidebook. The complaint is reciting in the factual narrative of what happened here, that it was the guidebook that the authority, as a matter of fact, relied upon. Why does paragraph 9, in talking about what New Lansing did, state that in June of 2014, New Lansing complied with the rules, and the rules that it states are its RSC, its rent comparability study, was prepared by the Gill Book in accordance with the uniform standards of professional appraisal practice, and chapter 9 of the 2012 guidebook, then in effect? Yes, ma'am. That paragraph 9 is addressed exclusively to the renewal process that took place in 2014, five years before the events we're talking about here. But it's a guidebook, and you're relying on your compliance with the guidebook in order to begin the contractual relationship, but now you're saying that none of the guidebooks apply and cannot bind you. I'm struggling with that contrast. If I can explain. Please. Because before the contract is created, New Lansing goes to HUD, or the authority comes to HUD and says, New Lansing says, we want you to renew this contract. Now, if you want us to renew this contract, you have to submit a rent comparability study and do it in conformance with this guidebook. Okay, that's fine. This is what the process the parties went through to create the contract. Once the contract is formed, then going forward for the five-year adjustments that occur half a decade later, it's governed, dictated by the terms of the contract. And so paragraph 9 is not talking about the rent adjustment process, it's not acknowledging that the guidebook applies to the terms and conditions of the contract as administered five years later, Your Honor. Paragraph 9 is concerned exclusively with the events that occur before the contract formation. And so nowhere in the complaint is there any acknowledgment, as a matter of fact or law, that New Lansing agrees that the 140 percent rule applies to this contract. And it can't, even if it's a regulation or requirement, because it is inconsistent with Section 5. The contract entitles New Lansing to two fundamental things here. One is it entitles it to rents that are equal to comparable market rents. That is a defined term of art in MARA, which requires the rents to be equal to rents that non-Section 8 houses, projects in the market area with comparable facilities charge. And secondly, it requires the authority to make a reasonable determination of what the comparable market rents are when it makes the five-year adjustment. The 140 percent rule, if followed, as followed here, and you heard it here today, defeats those two things. As alleged, we didn't get comparable market rents. It was reduced below comparable market rents. Indeed, under their logic, HUD could say this is our requirement now. Without any APA rulemaking, you get only $1, and you have to follow that. They said that they did their study, and they're giving you 105 percent of what they believe is comparable market rent. No, ma'am. What they did, and I'll be clear about this, the HUD study was commissioned. The result was X dollars. The 140 percent rule says you must set the rents at 105 percent of X dollars. There was no discretion exercised by the authority here. And indeed, as we allege in the complaint, they couldn't make a reasonable determination or judgment here. They didn't exercise any judgment at all, and they couldn't based on this study because it was deliberately manipulated. And you asked about yes, we clearly in paragraphs 21 through 28, we go through the fact that the HUD commission study was manipulated by HUD and intentionally suppressed the results to come with an X dollar rate that was below market rate. Absolutely. I'm sorry. Please, yes. It just seems to me that your construction of this contract, of their obligations under this contract, means that they would always be in breach of one contract or another. So they're either going to be in breach of their obligation to HUD to follow HUD's rules or in violation of what you say is their obligation to follow reasonable, to make their own reasonable assessment. So they've entered into a contract that they necessarily must breach every time. No, ma'am, for two reasons. Why not? Both HUD's regulations and the authority's contract with HUD have provisions that say subsequent changes or amendments in HUD regulations and requirements that are inconsistent with existing Section 8 contracts don't apply retroactively to those contracts. We cited the HUD regulation in our reply brief and in the section discussing the authority's contract with HUD. They call it the ACC contract. There we cite the various provisions. If you go through their contract with HUD, it's quite clear that it calls out, it says you apply HUD regulations, including changes, unless it's inconsistent with a contract you've already entered into. So there is no possibility, Your Honor, that somehow the authority gets crosswise with HUD by following this contract because both the HUD regulations and their own contract have that carved out. Thank you, Your Honor. I have one last question that is along the line of what we've been discussing. So your position is you used properly the 2012 guidebook and then nothing else applied? Yes. Well, then, in your response to the motion to dismiss, on the record you say, but for the 140 percent rule from the 2017 guidebook, New Lansing's rent study was fully compliant with the requirements of the 2017 guidebook for rent studies and was approved by both CMHA's outside and inside appraisers. I'm struggling with the allegation that you are complying with the 2017 guidebook in response to the motion to dismiss if now your claim is that the 2017 guidebook does not apply. Elucidate it for me. Sure, Your Honor. I think that is just stating as a matter of fact that there could have been no complaint or criticism about the rent comparability study that New Lansing had commissioned for the five-year adjustment because not only did it comply as alleged with the applicable standards of the appraising profession, it even complied with HUD's own rent comparability guidelines. Which you say don't comply. No, but we say, but it's just pointing out that it is in compliance. It meets anybody's definition of what is an appropriate study. But very clear in the briefing that we say the 140 percent rule doesn't apply. And so but for the slavish following, adherence to the 140 percent rule, our study would have been approved. And instead the authority did not exercise any judgment here. It was prohibited to exercise any judgment. And instead followed the dictates of HUD to suppress our rents below what everybody agrees is the comparable market rent. Thank you, Your Honor. Thank you both for your argument. And the case will be submitted.